IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| In re: § | | |
| **James H. Maples and Virginia Maples,** § | Case No. 05-70128 | |
|    Debtors. § | Chapter 11 | |
| § | | |
| § | | |
| § | | |
| **James H. Maples and Virginia Maples,** § | | |
|    Plaintiffs, § | | |
| § | | |
| vs. § | Adversary No. 05-07009 | |
| § | | |
| **Johnny Partain and Teresa Partain,** § | | |
|    Defendants. § | | |

## MEMORANDUM OPINION ON SUMMARY JUDGMENT

On December 20, 2005, a hearing was held on the parties' cross motions for summary judgment. For the reasons set forth below, the Plaintiff's Motion for Summary Judgment [docket no. 158] is granted in part and denied in part. Texas State Bank's Motion for Summary Judgment is granted [docket no. 155]. The transfers received by the Partains are avoided. Defendant's Motion for Summary Judgment [docket no. 161] is denied.

### Summary Judgment Standard

"A motion for summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Pluet v. Frazier,* 355 F.3d 381, 383 (5th Cir. 2004). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and evidence that it believes demonstrate the absence of a genuine issue of material fact. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir 1994). Material issues are those that could affect the outcome of the action. *Wyatt v. Hunt Plywood, Co. Inc.,* 297 F.3d 405, 409 (5th

1

Cir. 2002). Upon an adequate showing in a motion for summary judgment, the burden shifts to the non-moving party to establish a genuine issue of material fact. *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994). The court then views the facts in the light most favorable to the non-moving party. *St. David's Health Care Sys. v. United States*, 349 F.3d 232, 234 (5th Cir. 2003) (citing *Wyatt*, 297 F.3d at 409).

## Preference

The fundamental issue that gives rise to this dispute is whether the pre-petition transfers obtained by the Partains in a judgment issued by the Hidalgo County Court at Law No. 1 constitute an avoidable pre-petition transfer.

Section 547(b) of the Bankruptcy Code provides,[1] in relevant part:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
    (1) to or for the benefit of a creditor;
    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
    (3) made while the debtor was insolvent;
    (4) made—
        (A) on or within 90 days before the date of the filing of the petition; or
        (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
    (5) that enables such creditor to receive more than such creditor would receive if—
        (A) the case were a case under chapter 7 of this title;
        (B) the transfer had not been made; and
        (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

While many of the facts, issues and motives surrounding this case are seriously contested, the following facts are undisputed:

    1.    The Maples filed chapter 11 bankruptcy on February 16, 2005.

---

[1] All references to the Bankruptcy Code are to Title 11 of the United States Code as it existed on the date of the commencement of this proceeding. Subsequent amendments are not applicable to this lawsuit.

2. The Partains hold a judgment against the Maples. The judgment (as finally amended) was issued by the Hidalgo County Court on February 27, 2003.

3. On January 27, 2005, the Hidalgo County Court ordered that certain of the Maples' assets were transferred to the Partains to satisfy, in part, the Partains' judgment.

4. January 27, 2005 is within the 90-day preference period set forth in § 547(b)(4)(A).

Section 547(b)(1) requires that a transfer be to or for the benefit of a creditor. Based on the foregoing undisputed facts, the Court finds that the January 27, 2005 transfers were made to or for the benefit of the Partains.

Section 547(b)(2) requires that the transfer be made on account of an antecedent debt owed by the debtor before the transfer was made. Because the January 27, 2005 turnover order was made on account of the 2003 judgment, the Court finds that § 547(b)(2) is satisfied.

Section 547(b)(3) requires that the transfer be made at a time when the debtor was insolvent. Section 547(f) provides a rebuttable presumption of insolvency in the 90-day period preceding the date of the filing of the petition. Once the presumption of insolvency applies, the burden is on the respondent to prove that the debtor was solvent on the date of the transfer. *In re Ramba, Inc.*, 416 F.3d 394, 403 (5th Cir. 2005). Mr. Partain argued that the various claims and debts listed in the Debtors schedules are inaccurate or unmatured as of the petition date, and are therefore not liabilities that should be considered in determining the Debtor's solvency. The Partains have presented no evidence to support these contentions.[2] Instead, Mr. Partain incorrectly argued that the initial burden of proof was on the Debtor to prove it was insolvent.

---

[2] When asked by the Court what the Partains believed the value of the Debtor to be, Mr. Partain responded that he could not ascribe a value because he only had the records and values provided by the Debtor before him.

3

Simply alleging that the Debtors' valuations are inaccurate is insufficient. The Partains have not offered any summary judgment evidence to rebut the presumption of insolvency. Section 547(f) provides a presumption of insolvency. This Court would not be implementing the statute if it ignored that presumption and required the Debtors to offer proof of insolvency at a summary judgment hearing. The Partains declined to offer proof in this area; they fail to meet their summary judgment burden. Because the Partains failed to meet their burden of proof, the Court finds that the debtor was insolvent on January 27, 2005.

Section 547(b)(4)(a) requires that the transfer be made within 90-days of the filing of the petition if the transfer is to a non-insider. The January 27, 2005 transfer was made within 90-days of the filing of the petition, and the transfer was made to a non-insider.

Section 547(b)(5) requires that the creditor receive more than the creditor would receive in a hypothetical liquidation under chapter 7 of the Bankruptcy Code. In determining whether to grant a summary judgment, Federal Rule of Bankruptcy Procedure 7056(c) requires the Court to reach its decision based on the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." FED. R. BANKR. P. 7056(c). The Maples have included persuasive evidence—unrebutted by the Partains—that the Maples' assets are highly unlikely to produce a 100% distribution to creditors. The Maples' schedules reflect that their debts far exceed their assets. The recently filed disclosure statement shows far fewer assets than total claims. A transfer to an unsecured creditor provides that creditor more than would be received in a hypothetical chapter 7 if the case will not make a full distribution to all creditors. *In re Powerine Oil Co.*, 59 F.3d 969, 972 (5th Cir. 1995). Such is the case here. Accordingly, the Court finds that all elements of § 547(b) have been satisfied.

Nevertheless, a recipient of a transfer of the type described in § 547(b) may defend the transfer under any of the factors set forth in § 547(c). Section 547(c) reads as follows:

> (c) The trustee may not avoid under this section a transfer—
>     (1) to the extent that such transfer was—
>         (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
>         (B) in fact a substantially contemporaneous exchange;
>     (2) to the extent that such transfer was—
>         (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
>         (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
>         (C) made according to ordinary business terms;
>     (3) that creates a security interest in property acquired by the debtor—
>         (A) to the extent such security interest secures new value that was—
>             (i) given at or after the signing of a security agreement that contains a description of such property as collateral;
>             (ii) given by or on behalf of the secured party under such agreement;
>             (iii) given to enable the debtor to acquire such property; and
>             (iv) in fact used by the debtor to acquire such property; and
>         (B) that is perfected on or before 20 days after the debtor receives possession of such property;
>     (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—
>         (A) not secured by an otherwise unavoidable security interest; and
>         (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;
>     (5) that creates a perfected security interest in inventory or a receivable or the proceeds of either, except to the extent that the aggregate of all such transfers to the transferee caused a reduction, as of the date of the filing of the petition and to the prejudice of other creditors holding unsecured claims, of any amount by which the debt secured by such security interest exceeded the value of all security interests for such debt on the later of—
>         (A)
>             (i) with respect to a transfer to which subsection (b)(4)(A) of this section applies, 90 days before the date of the filing of the petition; or

       (ii) with respect to a transfer to which subsection (b)(4)(B)
       of this section applies, one year before the date of the filing
       of the petition; or
    (B) the date on which new value was first given under the security
    agreement creating such security interest;
(6) that is the fixing of a statutory lien that is not avoidable under section 545 of this title;
(7) to the extent such transfer was a bona fide payment of a debt to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that such debt—
    (A) is assigned to another entity, voluntarily, by operation of law, or otherwise; or
    (B) includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support; or
(8) if, in a case filed by an individual debtor whose debts are primarily consumer debts, the aggregate value of all property that constitutes or is affected by such transfer is less than $600.

  Subsection 547(c)(1) provides a defense for certain contemporaneous exchanges of value. However, the payment of a debt does not constitute a contemporaneous exchange for value under § 547(c)(1). See § 547(a)(2). *See, e.g.*, *In re Inv. Bankers, Inc.*, 136 B.R. 1008, 1021 (Bankr. D. Colo. 1989) ("if payment is received after the debt is incurred, this is payment of an antecedent debt").

  Section 547(c)(2) provides a defense for certain payments made in the ordinary course of business. The circumstances surrounding this transfer are not in question. The transfer occurred pursuant to a court order to satisfy a judgment. It was not made in the ordinary course of business.

  Section 547(c)(3) provides a defense with respect to the creation of a security interest for new value. There was no security interest here and there was no new value. This defense fails.

Section 547(c)(4) provides a defense if the recipient provided new value back to the debtor after the date of the transfer. No such new value was provided here. This defense fails.

Section 547(c)(5) provides a defense for certain inventory liens. This defense is not relevant to the present transaction.

Section 547(c)(6) provides a defense for the fixing of a statutory lien. A statutory lien arises "solely by force of a statute on specified circumstances or conditions" and does not include a judicial lien. 11 U.S.C. § 101(53). No statutory lien was created in this transaction. Accordingly, this defense fails.

Section 547(c)(7) provides a defense for certain types of domestic support payments. This defense is not relevant to this matter.

Section 547(c)(8) is limited to transfers of less than $600. This defense is not relevant here.

Because all of the potential defenses are inapplicable to the facts before the Court, the Court finds that the transfers made or contemplated by the January 27, 2005 turnover order are avoided.

### Determination of Dischargeability

The Partains seek a determination that the debt owed to the Partains is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (2)(B), (4), (6), (7) and (11). Exceptions to discharge must be strictly construed against the objecting creditor and liberally in favor of the debtor. *In re Davis*, 194 F.3d 570, 573 (5th Cir. 1999); *In re Boyle*, 819 F.2d 583, 588 (5th Cir. 1987).

Section § 523(a)(2) provides an exception to discharge for any debt:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—
>     (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; [or]

> (B) use of a statement in writing—
> > (i) that is materially false;
> > (ii) respecting the debtor's or an insider's financial condition;
> > (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> > (iv) that the debtor caused to be made or published with intent to deceive; …

11 U.S.C. § 523(a)(2). For a debt to be nondischargeable under § 523(a)(2), it must be shown that either: (1) money, property or services, or an extension, renewal or refinancing of credit was obtained by false pretenses, a false representation, or actual fraud; or (2) the debt was obtained by the use of a false financial statement. 11 U.S.C. § 523(a)(2).

The Partains argue that the Maples fraudulently created Global Limo, Inc. and engaged in a scheme to transfer or encumber assets to prevent the Partains from collecting the Hidalgo County Court judgment. In support of their claim, the Partains offer evidence of the Maples' purchase of a ranch immediately proceeding bankruptcy and cite the Hidalgo County Court judgment which established Mr. Maples' wrongful conduct. It is undisputed that the Hidalgo County Court judgment was based on a finding of fraud. The preclusive effect of a state court judgment in a subsequent federal case is determined by reference to state law. *In re Schwager*, 121 F.3d 177, 181 (5th Cir. 1997). Under Texas law, collateral estoppel requires that: (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *Id.* While the Hidalgo County Court judgment may preclude the parties from relitigating the issue of Mr. Maples' fraudulent conduct, neither party has submitted any findings of fact or conclusions of law from the Hidalgo County Court action. It is unclear whether money, property or services, or any type of credit was obtained by Mr. Maples' fraudulent conduct, or whether the fraudulent conduct related to a false financial statement.

Plaintiff has not established the absence of a genuine issue of material fact with respect to each element under § 523(a)(2)(A) or (B). Accordingly, a fact issue remains and summary judgment is denied.

Section § 523(a)(6) provides an exception to discharge for any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). To fall within this exception, the debt must arise from injury to an entity or property that is both willful and malicious. *Id*.; *In re Holt*, 310 B.R. 675, 678 (Bankr. N.D. Tex. 2004). A willful injury requires a deliberate or intentional injury; a deliberate or intentional act that results in injury is not sufficient. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). Malicious means without just cause or excuse. *In re Garner*, 56 F.3d 677, 681 (5th Cir. 1995).

The Partains allege that the Maples' wrongful conduct in creating Global Limo, Inc. and transferring or encumbering assets to prevent the Partains from collecting the Hidalgo County Court judgment support a determination that the debt should be excepted from discharge under 523(a)(6). The Maples disagree. The circumstances surrounding the Maples' purchase of the ranch are unclear. There is no evidence before this Court that the Hidalgo County Court judgment was based on a finding that Mr. Maples' willfully and maliciously injured the Partains. It is unclear whether these issues were actually litigated in the state court action, and if so, whether they were essential to the judgment. Accordingly, a genuine issue of fact remains. Summary judgment is denied.

Section § 523(a)(4) provides an exception to discharge for any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). The creditor bears the burden of proving that the debt falls within the § 523(a)(4) exception. *In re Nicholas*, 956 F.2d 110, 114 (5th Cir. 1992). To prevail under § 523(a)(4), the

Partains must establish a fiduciary relationship. To qualify as "fiduciary" for debt dischargeability purposes, duties must have existed prior to, rather than by virtue of, any claimed misappropriation or wrong. *In re Tran*, 151 F.3d 339, 342 (5th Cir. 1998). The Partains' sole claim of ownership of Global Limo arises out of the transfers made pursuant to the January 27, 2005, Hidalgo County Court judgment. All of these transfers are avoided. Accordingly, the Partains have no standing, and the § 523(a)(4) claim is dismissed.

Section § 523(a)(7) provides an exception to discharge for certain fines, penalties or forfeitures that are payable to and for the benefit of a governmental unit. 11 U.S.C. § 523(a)(7). It is undisputed that the debt at issue in this proceeding arose pursuant to the Hidalgo County Court judgment and that the debt is owed to the Partains, two individuals. Accordingly, this provision is not relevant and summary judgment is granted in favor of the Debtors.

Section § 523(a)(11) provides an exception to discharge for any debt resulting from certain judgments, orders or settlement agreements when the debts arose "from any act of fraud or defalcation while acting in a fiduciary capacity committed with respect to any depository institution or insured credit union." 11 U.S.C. § 523(a)(11). The Partains have presented no evidence that the debt at issue arose from fraud or defalcation committed by the Maples while they were acting in a fiduciary capacity with respect to a depository institution or insured credit union. Accordingly, this provision is not relevant and summary judgment is granted in favor of the Debtors.

**Objection to Discharge**

The Partains argue for the disallowance of Debtor's discharge under 11 U.S.C. § 727(a)(7). Section 727(a) states, in relevant part:

> The court shall grant the debtor a discharge, unless—
> …

10

>(7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case under this title or under the Bankruptcy Act, concerning an insider;
>
>…

11 U.S.C. § 727(a).

Section 727(a)(7) extends the basis for denial of discharge to a debtor's misconduct in connection with the bankruptcy of an insider. *In re Krehl*, 86 F.3d 737, 744 (7th Cir. 1996); *In re Powell*, 88 B.R. 114, 117 (Bankr. W.D. Tex. 1988). The purpose of § 727(a)(7) is to bind "related cases together so that misconduct in one case by an individual may be chargeable against that individual in other related proceedings." *Whiteside F.S. Inc. v. Siefkin*, 46 B.R. 479, 480-81 (Bankr. D.C. Ill. 1985). The Partains have not presented any evidence of any related bankruptcy proceedings filed by an insider. Accordingly, § 727(a)(7) is inapplicable. Partial summary judgment is granted in favor of the Maples with respect to the § 727(a)(7) cause of action.

## Claims by Partains

The Partains assert numerous theories of recovery.[3] For the purpose of completeness, the Court addresses each claim separately.

**Fraud, Constructive Fraud and Fraudulent Transfers**

These claims allege that Maples made transfers that diminished the size of his estate in order to stop the Partains from collecting amounts owed to them. The Partains seek recovery both from Maples and from the alleged recipients of the transfers, primarily Texas State Bank. Claims that allege that the size of the estate has been diminished are property of the estate. *See*

---

[3] The Partains also claim that Maples is unable to prove entitlement to a preliminary injunction. This appears to be an attempt by the Partains to re-litigate the issues previously adjudicated by the Court's May 19, 2005 order granting a preliminary injunction. This issue is not properly before the Court as no motion to reconsider or request for injunctive relief is presently pending before this Court.

11

*In re Educators Group Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994).  The remedy for such claims is to pay money into the estate for an equitable distribution to all creditors—not just the Partains.  The Fifth Circuit has repeatedly held that such claims may be asserted only by the estate's fiduciaries.  *See In re MortgageAmerica Corp.*, 714 F.2d 1266, 1272 (5th Cir. 1983).  Neither of the Partains is an estate fiduciary.  Accordingly, they have no standing to bring these claims.  They must be dismissed for want of standing.

**Conversion**

This claim is asserted on behalf of Global Limo, Inc.  The Partains allege that Global Limo's assets were converted by Texas State Bank and the Maples.  The Partains' sole claim of ownership of Global Limo arises out of the transfers made pursuant to the January 27, 2005 Hidalgo County Court judgment.  Because all of those transfers are avoided, the Partains may not assert claims on behalf of Global Limo.

**Intentional Interference with the Right to Pursue a Lawful Business**

This claim is also asserted on behalf of Global Limo, Inc.  The Partains allege that Global Limo's assets were converted by Texas State Bank and the Maples which interfered with the Partains' ability to effectively operate the business.  The Partains' sole claim of ownership of Global Limo arises out of the transfers made pursuant to the January 27, 2005 Hidalgo County Court judgment.  Because all of those transfers are avoided, the Partains may not assert claims on behalf of Global Limo.

**Negligence and Gross Negligence**

These claims originate in two principal ways.

First, the Partains claim that Texas State Bank intentionally created a conflict of interest with the Partains' attorneys on or about January 29, 2002.  Texas State Bank offers the affidavits

of its agents that it was not engaged in any alleged conflict. Texas State Bank also offers summary judgment evidence in the form of a judgment against Mr. Partain and in favor of his counsel on this same issue. Mr. Partain offers no competent summary judgment evidence in support of this allegation. Texas State Bank is entitled to summary judgment on this issue.

Second, the Partains claim negligence with respect to the handling of Global Limo's affairs and by assisting in the hiding and conversion of assets. For reasons set forth above, the Partains have no standing to bring any of these claims.

**Attorneys Fees**

The Partains have not prevailed on any issue. They are not entitled to attorneys fees.

## Conclusion

The transfers received by the Partains pursuant to the Hidalgo County Court judgment and orders are avoided. Texas State Bank's motion for summary judgment is granted. The Maples' motion for summary judgment is granted in part and denied in part. The Partains' motion for summary judgment is denied. Trial will be limited to the issue of whether the debt owed to the Partains is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (2)(B), or (6). Trial will begin at 9:00 a.m. on April 18, 2006, at the United States Bankruptcy Court, McAllen, Texas. All other relief is denied.

Signed at Houston, Texas, on January 26, 2006.

MARVIN ISGUR
United States Bankruptcy Judge